*United States Bankruptcy Court*
*District of New Jersey*
*Clarkson S. Fisher Federal Building*
*United States Courthouse*
*402 East State Street*
*Trenton, New Jersey 08608*

*Hon. Kathryn C. Ferguson*                                                                                      *(609) 858-9351*
*Chief Bankruptcy Judge*

## LETTER DECISION

March 21, 2017

Joseph Albanese, Esquire
Law Office of Joseph Albanese
915 Lacey Road
Forked River, New Jersey 08731

Peter J. Broege, Esquire
Broege, Neumann, Fischer & Shaver, LLC
25 Abe Voorhees Drive
Manasquan, New Jersey 08736

               Re:  Kathleen M. Larkin -  Case No. 12-14635

                  Motion to Enforce Settlement (Doc. #128)
                  Hearing Date:  March 7, 2017

Dear Counsel:

  On February 3, 2017, the debtor filed a motion to enforce a settlement. Shahira Raineri filed opposition to the motion and the debtor filed a reply to the opposition. The parties requested that the court decide the motion on the papers.

  The debtor contends that she and creditor Shahira Raineri have entered into a full and final settlement of all disputes between them. The debtor further contends that Ms. Raineri is attempting to repudiate that oral settlement. Ms. Raineri argues that there is no settlement to enforce because the debtor and Ms. Raineri could never agree on any consideration to be paid by the debtor to Ms. Raineri in connection with the debtor obtaining relief in the bankruptcy court or on her appeal to the Third Circuit. Ms. Raineri points to communications from May and June 2016 as evidence of the lack of agreement.

State law governs the enforcement of settlement agreements in federal court.[1] New Jersey has a long-standing public policy in favor of settlement.[2] To that end, courts is New Jersey will enforce settlements, both oral and written, absent fraud or other compelling circumstances.[3] As stated by Judge (now Justice) Long:

> In our view the beginning point of this analysis is the strong public policy in this state in favor of settlement. The point of this policy is not the salutary effect of settlements on our overtaxed judicial and administrative calendars (although this is an undeniable benefit) but the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone. In recognition of this principle, courts will strain to give effect to the terms of a settlement wherever possible.[4]

It is immaterial to the enforceability of an oral settlement whether the terms were placed on the record in open court.[5] The enforceability of an oral contract is also not undermined by the fact that a later writing was contemplated.[6]

With that legal framework in mind, the court turns to the settlement in question. The parties agree that there have been ongoing settlement negotiations in this case, including a written settlement agreement in November 2015 that was signed by Ms. Raineri but not Ms. Larkin. After that, settlement discussions continued and ultimately resulted in a joint motion being filed in the Third Circuit seeking partial remand to the bankruptcy court. Prior to the motion being filed, an email dated March 10, 2016 from Ms. Raineri's counsel states that "his client is on board for the motion." The joint motion before the Third Circuit was filed on March 28, 2016, and states that "the parties agreed to the terms of a proposed settlement that will resolve all disputes between the parties … As a condition of that settlement, the parties have agreed and stipulated that the Order of the Bankruptcy Court denying appellant, Kathleen Larkin, a bankruptcy discharge must be vacated." The Third Circuit granted the motion and the matter was partially remanded to the bankruptcy court. After that joint motion was granted, Ms. Raineri's bankruptcy counsel sent a letter dated May 20, 2016 stating that Ms. Raineri "will not consent to a motion to vacate the order for summary judgment that denied Kathleen Larkin her discharge." Then, in an email dated June 22, 2016, Ms. Raineri's counsel in California stated that Ms. Raineri "is generally willing to entertain a settlement that would grant your client a

---

[1] *Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483 (3d Cir. 2006)
[2] *Willingboro Mall, Ltd. v. 240/242 Franklin Ave., LLC*, 215 N.J. 242 (2013)
[3] *Williams v. Vito*, 365 N.J. Super. 225 (Law Div. 2003) (absent a statue to the contrary oral settlements are enforceable)
[4] *Dep't of Public Advocate v. N.J. Bd. of Public Utilities*, 206 N.J. Super. 523, 528 (App. Div. 1985)
[5] *Pascarella v. Bruck*, 190 N.J. Super. 118 (App. Div. 1983)
[6] See, *Restatement of Contracts § 27* ("Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adapt a written memorial ...")

discharge with the bankruptcy court. However, the $72,000 being offered is not acceptable to her. She will not accept less than $225,000."

From the court's perspective, the pivotal date for determining if there is an enforceable settlement is March 28, 2016. Anything that happened after counsel jointly represented to the Third Circuit that the matter was settled falls in the category of "second thoughts" and has no bearing on the enforceability of the settlement. As the Appellate Division said, "if later reflections were the test as to the validity of such an agreement, few contracts or settlements would stand."[7] New Jersey courts are uniform in holding that "second thoughts are entitled to absolutely no weight as against our policy in favor of settlement."[8]

In a similar case, *Lahue v. Costa,* parties reported to the trial court that a global settlement had been reached resolving complex litigation.[9] In later enforcing that oral settlement, the Appellate Court found it critical that neither the parties nor their attorneys informed the trial court that the settlement was contingent on later ratification or subject to continuing negotiations. *Lahue*, like this case, involved a contentious family and business dispute, involved the resolution of interlocking disputes, and was vigorously negotiated by both parties over the course of many months. Under those circumstances, a court does not take a report of a settlement lightly and will resist efforts by one party to later claim no settlement was reached. The policy of New Jersey is to encourage settlements and the court should "strain" to uphold such settlements.[10] It has been noted that the systematic harm it would cause if judges could not rely on a report of settlement would be far from trivial.[11]

Under New Jersey law, a settlement agreement constitutes a form of contract, and courts accordingly turn to "the general rules of contract law" in evaluating the construction and enforcement of such agreements.[12] All the elements of a binding contract are present here: offer and acceptance (as evidenced by the representation to the Third Circuit that the matter was settled) and consideration (release of the escrowed funds). "A settlement agreement becomes an enforceable contract when the parties agree upon and manifest their intent to be bound by all the essential terms of the proposed contract."[13]  There is no meritorious dispute over the essential settlement term, i.e., that the escrowed funds of $72,612.17 be released to Ms. Raineri. The source of the conflict centers on Ms. Raineri consenting to Ms. Larkin receiving a bankruptcy discharge and whether that consent has monetary value. Thus, the ultimate question for this court is whether the discharge issue is an essential term to the settlement such that lack of agreement on that point would prevent enforcement of the rest of the settlement. To be essential it would have to go to the very essence of whether a contract was formed because "[s]o long as the basic

---

[7] *Pascarella v. Bruck*, 190 N.J. Super. 118, 126 (App. Div. 1983)
[8] *Bistricer v. Bistricer*, 231 N.J. Super. 143 (Ch. Div. 1987) (quoting *Dep't of Public Advocate v. N.J. Bd. of Public Utilities*, 206 N.J. Super. 523, 530 (App. Div. 1985))
[9] *Lahue v. Costa*, 263 N.J. Super. 575 (App. Div. 1993)
[10] *Dept. Pub. Adv. v. N.J. Bd. of Public Utilities*, 206 N.J. Super. 523, 528 (App. Div. 1985)
[11] *Williams v. Vito*, 365 N.J. Super. 225 (Law Div. 2003)
[12] *Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492 (3d Cir. 2006)
[13] *Norman Towers P'ship, LLC v. PWH Consulting, Inc.*, 2014 WL 3764128, at *3 (N.J. Super. Ct. App. Div. Aug.1, 2014) (citing *Hagrish v. Olson*, 254 N.J. Super. 133 (App. Div. 1992)

essentials are sufficiently definite, any gap left by the parties should not frustrate their intention to be bound."[14] Courts are loath to let non-essential terms abrogate a settlement agreement. As stated by one court, "the proposition that a case is not settled until the last 'i' is dotted and the last 't' is crossed on a written settlement agreement carries the germ of much mischief."[15]

The case of *Hagrish v. Olson*[16] is instructive here. The trial court in *Hagrish* denied a motion to enforce a settlement because the attorneys had become embroiled in a dispute over releases, causing the court to conclude there was never a binding agreement. The Appellate Division reversed holding that the plaintiff's failure to execute release documents did not void the original agreement, nor did it render it deficient from the outset. The court reasoned that the execution of a release was a mere formality, not essential to formation of the contract of settlement. In this case, the court finds that the requirement that the debtor receive a discharge was a similar formality. It was even less important than the promised releases in *Hagrish* because it was not something that was in the control of either party. Accordingly, despite how it might have been viewed by the parties, the discharge issue could not have been an essential term to their settlement because only the bankruptcy court can rescind its order denying discharge. The court finds that the parties clearly manifested their intent to be bound by a settlement when they authorized the joint motion before the Third Circuit, and the essential term of that settlement is ascertainable; therefore, the court will grant the motion to enforce the settlement.

As part of this motion, the debtor also seeks to reopen adversary proceeding 12-1809 and to revoke the prior order denying the debtor a discharge.[17] Section 350 of the Bankruptcy Code governs reopening cases and provides that a case may be reopened for "cause." The order of the Third Circuit partially remanding adversary proceeding 12-1809 to the bankruptcy court is *per se* cause to reopen. Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, "[o]n motion and just terms, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ... (3) fraud ...; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; ... or (6) any other reason that justifies relief." Fed. R. Civ. Proc. 60(b). The court finds that the existence of newly discovered evidence warrants relieving the debtor of the final judgment entered July 29, 2014, denying her a discharge pursuant to 11 U.S.C. § 727(a)(4). After the trial in the bankruptcy court, it came to light that the debtor's first bankruptcy attorney had his license to practice law suspended by the Supreme Court of New Jersey, and in connection with that suspension he admitted to gross neglect, a pattern of neglect, lack of diligence, and a failure to communicate with the client. While that new evidence does not excuse the debtor's signing of her bankruptcy petition in blank, that information undercuts the finding of intent to deceive needed under § 727(a)(4). Of perhaps greater importance is the fact that in October 2014, the debtor's Chapter 7 trustee voluntarily dismissed his adversary

---

[14] *Berg Agency v. Sleepworld-Willingboro, Inc.*, 136 N.J. Super. 369, 377 (App. Div. 1975)

[15] *Bistricer v. Bistricer*, 231 N.J. Super. 143 (Ch. Div. 1987)

[16] 254 N.J. Super. 133, 137-38 (App. Div. 1992)

[17] This motion was inadvertently filed in the main bankruptcy case as opposed to in adversary proceeding 12-1809. Also, no order denying a discharge was ever entered in that case. The court issued an oral opinion granting summary judgment on Count Three of the complaint which was premised on 11 U.S.C. § 727(a)(4).

proceeding against the debtor which also contained a § 727(a)(4) count. While an individual creditor may undertake a 727 action based on personal animus or ill-will, a Chapter 7 trustee has a duty to protect all creditors and the integrity of the bankruptcy system. A trustee's decision to dismiss a 727 action holds far more weight than an individual creditor's decision would.[18] Those two facts taken together persuade the court that in the interest of justice it should vacate its prior ruling and grant the debtor a discharge.

       The motion is granted in its entirety. Debtor's counsel should submit an order in accordance with this opinion.

*/s/ **Kathryn C. Ferguson***
KATHRYN C. FERGUSON
US Bankruptcy Judge

---

[18] Since Ms. Raineri's "consent" to the debtor receiving a discharge would have held little to no weight with the bankruptcy court (and presumably the Third Circuit), it lends further support to the conclusion that it was not an essential term to the settlement.

5